NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

NHE/FREEWAY, INC., et al.,
Respondents.

No. 75–1827.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 22, 1976.

Decided Dec. 3, 1976.

Elliott Moore, Deputy Associate Gen. Counsel, John D. Burgoyne and John C. Rother, Attys., N. L. R. B., Washington, D. C., for petitioner.

Ralph Adam Fine, Milwaukee, Wis., for respondents.

Before CLARK *, Associate Justice (Retired), FAIRCHILD, Chief Judge, and HASTINGS, Senior Circuit Judge.

PER CURIAM:

This enforcement proceeding, filed by the National Labor Relations Board, petitioner, v. NHE/Freeway, Inc., National Health Enterprises, Inc. and Health Facilities, Inc. (NHE), respondents, seeks an order requiring payment of back pay found to be due certain employees of NHE. The Board opinion may be found at 218 NLRB No. 41.

NHE had previously agreed to a settlement stipulation under which it admitted that it had discriminatorily discharged and/or refused to rehire certain employees, including the three involved here, because of their union or other concerted protected

* Associate Justice Tom C. Clark, United States Supreme Court (Ret.), is sitting by designation.

activity, an unfair labor practice under Section 8(a)3 of The National Labor Relations Act. The Regional Director of the Board issued a back pay specification covering the amounts due each discriminatee. However, at a hearing before the Administrative Law Judge, it was found that two of the employees, Wanda Patton and Katherine Young, had forfeited their right to back pay by engaging in a willful loss of interim earnings and their respective claims were rejected; and the claim of Beulah Hunt was allowed.[1] On reference to the Board, it found that the Administrative Law Judge erred with respect to all three claims, finding that Ms. Patton and Ms. Young did exercise due diligence in seeking employment to mitigate back pay, but that Ms. Hunt did not. It found that Ms. Hunt, after filing with the Wisconsin Employment Service and seeking employment for a week or two as a nurse's aide at one health facility, made no further attempts whatsoever to find work, although aware of the fact that employment existed in the area for positions in the hospital and nursing fields as well as others. We direct the enforcement of the Board's order.

## I

While NHE makes no contest here of the Board Findings as to the gross amount of back pay due, it does insist that the Board should have found that the willful failure of Ms. Patton and Ms. Young to seek other work during the back pay period relieved it of liability for back pay. In this connection, we view the duty of NHE differently. As was held in *N. L. R. B. v. Mastro Plastics Corp.*, 354 F.2d 170, 178 (2nd Cir. 1965), cert. den. 384 U.S. 972, 86 S.Ct. 1862, 16 L.Ed.2d 682 (1965), the "finding of an unfair labor practice . . . is presumptive proof that some back pay is owed." And the Board has discharged its burden when it finds the gross amount of the back pay due. *N. L. R. B. v. J. H. Rutter-Rex Mfg. Co.*, 396 U.S. 258, 90 S.Ct.

417, 24 L.Ed.2d 405 (1969). The burden then shifts to the violator "of establishing affirmative defenses which would mitigate his liability." *N. L. R. B. v. Mooney Aircraft, Inc.*, 366 F.2d 809, 813 (5th Cir. 1966), such as here where it is claimed that the discriminatee "fails diligently to search for alternative work," *N. L. R. B. v. Mastro Plastics Corp.*, 354 F.2d 170, 174 n. 3 (2nd Cir. 1965), cert. den. 384 U.S. 972, 86 S.Ct. 1862, 16 L.Ed.2d 682; or failure "to make a reasonable search for interim work," *N. L. R. B. v. Miami Coca Cola Bottling Co.*, 360 F.2d 569, 575 (5th Cir. 1966); or failure to make an "honest good faith effort" to find work. *N. L. R. B. v. Cashman Auto Co.*, 223 F.2d 832, 836 (1st Cir. 1955).

## II

The record shows that NHE had employed Ms. Young as a cook and had employed Ms. Patton as a nurse's aide. Ms. Young had extensive experience as a cook in both hospitals and nursing homes while Ms. Patton was just beginning her work experience as a nurse's aide. After being discharged by NHE, both Ms. Young and Ms. Patton registered with the Wisconsin Employment Service for work, respectively, as cook and nurse's aide. Ms. Young applied for work as a cook at nine hospitals and three nursing homes, returning on several occasions to re-apply. Ms. Patton as well sought work as a nurse's aide at eight hospitals and one nursing home. They both applied for factory work with Ms. Young making four such applications and Ms. Patton three. On four of the times Ms. Young made application for work, she was accompanied by a Pearl Jennings. Ms. Patton as well, at several of the places where she applied for work was accompanied by a Billy Scott. Both of these individuals were produced by Ms. Young and Ms. Patton, respectively, at the hearing before the Administrative Law Judge, to testify in regard to the making of their applications. The back pay period for Ms. Young was estab-

---

1. A fourth discriminatee, Judith Mikalauski, had her claim resolved separately at the time of the hearing before the Administrative Law Judge.

lished as the period beginning April 1, 1973 through April 8, 1974, while that of Ms. Patton was April 1, 1973 through December 5, 1973.

The only testimony NHE offered was that of five representatives from four of the hospitals and one of the nursing homes where Ms. Young and Ms. Patton had stated they had placed applications.[2] The witnesses were in charge of personnel matters at their respective institutions, but they did not receive or process the applications for work, nor did they meet with or interview any applicants. Each testified that a check of their records failed to reveal any application from Ms. Young or Ms. Patton, and, further, that if the applications were filed and standard hospital practices were followed, the applications of Ms. Young and Ms. Patton would have been found. None of the witnesses described the practices required by the hospital nor were any witnesses tendered who processed applicants, i. e. actually met with them and received their forms, etc.

### III

■ It therefore appears that this record contains affirmative, wholly uncontradicted evidence that Ms. Young sought work at sixteen different hospitals and factories, and Ms. Patton at twelve. In addition, each was corroborated by the testimony of a witness who accompanied each, to a number of the places where they applied. Ms. Patton even produced the application she made at one of the factories, and admittedly both women registered with the Wisconsin Employment Service. However, the Administrative Law Judge, on the basis of testimony given by the personnel officers, discredited all of the testimony of Ms. Young and Ms. Patton, together with that of their witnesses.

We agree with the Board that there was no logical contradiction between the testimony of the women and the NHE. The latter's testimony only indicated that at the time of the administrative hearing, these four hospitals and this one nursing home could not find any applications in their files from Ms. Young and Ms. Patton. There was no testimony that Ms. Young and Ms. Patton did not file applications. Moreover, the personnel officers did not describe the system of filing used, the number of applicants filing annually, the format of the application, the number of people having access to the files, the security surrounding them, the time period of their maintenance and other relevant circumstances. At most—rather than disproving the testimony of these two women and their supporting witnesses—it may have cast some doubt on their testimony with respect to the institution involved. It never touched their testimony as to a dozen other employers whom Ms. Young approached and the eight to which Ms. Patton made application. In any event, "[any] such doubts as [The Administrative Law Judge] expressed as to her credibility were based not on her demeanor but on matters of record as to which the Board could legitimately believe itself as competent to pass as he was." *N. L. R. B. v. A. P. W. Products Co.*, 316 F.2d 899, 903 (2nd Cir. 1963). And, finally, any doubt in the evidence must be resolved in favor of the employee, not the employer. *N. L. R. B. v. Madison Courier Inc.*, 153 U.S.App. D.C. 232, 472 F.2d 1307, 1319–1321 (1972).

■ We therefore conclude that "no particular weight attached to the conclusions" of the Administrative Law Judge. *Time-O-Matic, Inc. v. N. L. R. B.*, 264 F.2d 96, 102 (7th Cir. 1959); and even if we apply the test suggested by NHE (a clear preponderance of all of the relevant evidence), the Board was correct in its conclusions.[3]

---

**2.** ₒThe hospitals for whom these witnesses appeared were: Doctors, Columbus, North West General, St. Joseph's and the Park Manor Nursing Home. Ms. Young testified that she had applied at Doctors, Columbus and N.E. General and Park Manor Nursing Home; while

Ms. Patton claimed that she had applied at Doctors, Columbus and St. Joseph's Hospital.

**3.** As to Beulah Hunt, the action of the Administrative Law Judge was clearly erroneous. As we have indicated, she sought employment for some two or three weeks at one health facility

The enforcement order will issue.

It is so Ordered.

on several occasions, but failing to secure a job there, made no subsequent attempts to locate other employment, although she was aware of other institutions where employment opportu-nities existed. The Board correctly vacated her award.