877 F.2d 1036
 131 L.R.R.M. (BNA) 2864, 278 U.S.App.D.C. 248
 DEPARTMENT OF the AIR FORCE, SACRAMENTO AIR LOGISTICS
CENTER, McCLELLAN AIR FORCE BASE, CALIFORNIA, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY,
American Federation of Government Employees, AFL-CIO, Local
3854, Intervenor.
DEPARTMENT OF the AIR FORCE, HEADQUARTERS AIR FORCE
LOGISTICS COMMAND, WRIGHT-PATTERSON AIR FORCE
BASE, OHIO, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY,
American Federation of Government Employees, AFL-CIO, Intervenor.
AIR FORCE LOGISTICS COMMAND, McCLELLAN AIR FORCE BASE,
CALIFORNIA, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY,
American Federation of Government Employees, AFL-CIO, Intervenor.
 Nos. 87-1282, 87-1038 and 87-1039.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 3, 1989.
Decided June 23, 1989.
 
 Dwight G. Rabuse, Atty., Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen., and Douglas N. Letter, Atty., Dept. of Justice, Washington, D.C., were on the brief, for petitioners.
 Robert J. Englehart, Attorney, Federal Labor Relations Authority, with whom William E. Persina, Acting Sol., Federal Labor Relations Authority, and Arthur A. Horowitz,, Associate Sol., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.
 Stuart A. Kirsch and Mark D. Roth, Washington, D.C., were on the brief, for intervenor.
 Before MIKVA, SILBERMAN, and WILLIAMS, Circuit Judges.
 Opinion for the Court filed by Circuit Judge MIKVA.
 MIKVA, Circuit Judge:
 
 
 1
 The issue in these consolidated cases is whether the Federal Labor Relations Authority ("FLRA" or "Authority") may direct federal agencies to pay travel expenses and per diems to their employees who are required to appear at FLRA proceedings. We find that these cases are controlled by Bureau of Alcohol, Tobacco, and Firearms v. FLRA, 464 U.S. 89, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983) ("BATF "), in which the Supreme Court held invalid a FLRA rule ordering federal agencies to pay travel expenses and per diems to employees engaged in collective bargaining as union negotiators. We therefore grant the petitions for review.
 
 I.
 
 2
 Petitioners (collectively "Air Force") seek review of FLRA decisions ordering the payment of travel expenses and per diems to civilian employees required to appear at Authority proceedings concerning allegations of unfair labor practices. The FLRA in its decisions below also ordered the Air Force to grant "official time" to its employees for the duration of their participation in matters before the Authority, such that the employees would be paid for those hours; the Air Force does not contest this aspect of the Authority's decisions.
 
 
 3
 In Department of the Air Force, Headquarters, Air Force Logistics Command, Wright-Patterson Air Force Base, 24 F.L.R.A. (No. 26) 187 (1986) ("Wright-Patterson "), the Air Force refused to provide travel and per diem expenses to Paul Palacio, president of American Federation of Government Employees ("AFGE") Council 214, who was subpoenaed by the FLRA General Counsel to appear at an unfair labor practice proceeding in which Council 214 was the charging party. The FLRA ordered the Air Force to reimburse Palacio for his expenses. In Air Force Logistics Command, McClellan Air Force Base, California, and Dora Solorio, 24 F.L.R.A. (No. 33) 274 (1986) ("McClellan "), the Air Force refused to pay the travel expenses of Dora Solorio, a civilian Air Force employee and Chief Steward and Second Vice President of AFGE Local No. 1857 at McClellan Air Force Base, who was subpoenaed to testify at an unfair labor practice proceeding involving the Defense Logistics Agency, a separate organization within the Department of Defense which maintains a facility at McClellan. Neither the bargaining unit to which Solorio belonged nor her employing agency was a party to the case. Nevertheless, the FLRA found that to limit official time and travel reimbursement for employees participating in Authority proceedings according to the party on whose behalf an employee was testifying "would hamper the Authority's ability to fulfill its responsibilities under the Statute." McClellan, 24 F.L.R.A. at 275. In Department of the Air Force, Sacramento Air Logistics Center, 26 F.L.R.A. (No. 83) 674 (1987), DelMar Callaway, then president of AFGE Local No. 3854 at March Air Force Base in California, filed an unfair labor practice charge against the 22nd Combat Support Group in September 1985. On January 30, 1986, after Mr. Callaway had been reassigned to McClellan Air Force Base, the FLRA Regional Director issued a complaint and later subpoenaed Callaway to appear before an administrative law judge at a hearing held on April 16, 1986. The Air Force refused to reimburse Callaway for his travel expenses, and the FLRA ordered it to do so.
 
 
 4
 In each case the Authority has relied on a regulation that provides:
 
 
 5
 If the participation of any employee in any phase of any proceeding before the Authority, including the investigation of unfair labor practice charges and representation petitions and the participation in hearings and representation elections, is deemed necessary by the Authority, the General Counsel, any Administrative Law Judge, Regional Director, Hearing Officer, or other agent of the Authority designated by the Authority, such employee shall be granted official time for such participation, including necessary travel time, as occurs during the employee's regular work hours and when the employee would otherwise be in a work or paid leave status. In addition, necessary transportation and per diem expenses shall be paid by the employing activity or agency.
 
 
 6
 5 C.F.R. Sec. 2429.13 (1988) (emphasis added). Only the italicized portion of the rule is in dispute. The regulation was promulgated pursuant to 5 U.S.C. Sec. 7131(c) of the Federal Labor-Management Relations statute ("statute"), which states that:
 
 
 7
 the Authority shall determine whether any employee participating for, or on behalf of, a labor organization in any phase of the proceedings before the Authority shall be authorized official time for such purpose during the time the employee otherwise would be in a duty status.
 
 
 8
 The Air Force now petitions for review of the FLRA decisions, arguing that the regulation in question exceeds the Authority's power under section 7131(c).
 
 II.
 
 9
 In BATF, the Supreme Court held that Congress did not intend the Authority to provide travel and per diem expenses for employee negotiators, and that the Authority's decisions requiring such a result constituted an "unauthorized assumption by [the] agency of [a] major policy decisio[n] properly made by Congress," 464 U.S. at 108, 104 S.Ct. at 449 (quoting American Ship Building Co. v. NLRB, 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965)). At issue was section 7131(a) of the statute, which provides that:
 
 
 10
 Any employee representing an exclusive representative in the negotiation of a collective bargaining agreement under this chapter shall be authorized official time for such purposes, including attendance at impasse proceeding, during the time the employee otherwise would be in a duty status. The number of employees for whom official time is authorized under this section shall not exceed the number of individuals designated as representing the agency for such purposes.
 
 
 11
 The FLRA argued in BATF that section 7131(a) should be construed in tandem with section 7131(c), which the Authority viewed as empowering it to order agencies to pay the travel expenses of their employees required to appear in FLRA proceedings. The Court, however, properly limited its ruling to the precise issue before it:
 
 
 12
 The fact that the Authority interpreted two similar provisions of the Act consistently does not, however, demonstrate that either interpretation is correct. We, of course, express no view as to whether different considerations uniquely applicable to proceedings before the Authority might justify the FLRA's interpretation of Sec. 7131(c).
 
 
 13
 464 U.S. at 100 n. 9, 104 S.Ct. at 445, n. 9. However wrong the Authority was found to be on the question presented in BATF, we think it was correct to construe the two sections in tandem. The language is sufficiently parallel to warrant a common application. We must therefore close the square left open by the Court, and find the language and rationale of BATF dispositive of the case sub judice.
 
 
 14
 Subsections 7131(a) and (c) are drafted similarly: both provide that employees performing certain specified functions "shall be authorized official time" when they "otherwise would be in a duty status." The BATF Court found that use of the phrase "official time" did not imply that an employee was entitled to travel reimbursement and a per diem, because Congress used other terms of art, such as "official capacity" or "duty status," to "indicate than an employee is 'on the job' and entitled to all the usual liabilities and privileges of employment," 464 U.S. at 105, 104 S.Ct. at 448. In contrast, the fact that section 7131 authorizes official time only when an employee "otherwise would be in a duty status" (emphasis added), suggests that neither an employee appearing before the FLRA nor a union negotiator engaged in collective bargaining should be considered to be "in a duty status." In short, subsections 7131(a) and (c) are limited to the circumstances in which an employee may be granted official time, and neither speaks to travel expenses or per diems. The Authority has provided no basis for differentiating between them on the basis of their legislative history. We thus confront at the outset "the well known maxim of statutory construction that, when the same terms are used in different sections of a statute, they receive the same meaning." Firestone v. Howerton, 671 F.2d 317, 320 n. 6 (9th Cir.1982).
 
 
 15
 In addition, the rationale of BATF extends to section 7131(c) as well as section 7131(a). The FLRA had maintained in BATF that because collective bargaining is in "the public interest" and "contributes to the effective conduct of public business," citing 5 U.S.C. Sec. 7101(a), "civil servants on both sides of the bargaining table are engaged in official business of the Government and must be compensated equally." 464 U.S. at 102, 104 S.Ct. at 446. The FLRA concluded that "Congress employed the term 'official time' in Sec. 7131 [the phrase appears in both (a) and (c) ] specifically to indicate that employee negotiators are engaged in Government business and therefore entitled to all of their usual forms of compensation." Id.
 
 
 16
 The Court, however, rejected "the model of collective bargaining" advanced by the FLRA, 464 U.S. at 103, 104 S.Ct. at 447. It concluded that the congressional finding that collective bargaining was in the public interest did not indicate that Congress intended agencies to "subsidize[ ]" it by providing travel allowances. 464 U.S. at 104, 104 S.Ct. at 447. The Court's reasoning requires the rejection of the FLRA's position in this case that an employee appearing before it is performing some "public function" by helping the FLRA "develop complete records in proceedings before it so that the Authority may carry out its responsibilities under the Statute." Wright-Patterson, 24 F.L.R.A. at 191. The fact that an employee may be assisting the FLRA to carry out its mandate is no reason to make the agency pay for his travel. If anything, the fact that the Authority called the witness might suggest that it ought to bear his expenses, a practice apparently followed by the National Labor Relations Board in unfair labor practice proceedings, see 29 U.S.C. Sec. 161(4); 29 C.F.R. Sec. 102.32 (1988); see also Lewis v. National Labor Relations Board, 357 U.S. 10, 15-16, 78 S.Ct. 1029, 1032-33, 2 L.Ed.2d 1103 (1958) (holding that the NLRB General Counsel is a "party" for purposes of issuing subpoenas).
 
 
 17
 The FLRA argues that BATF can be distinguished because under the Executive Order regime which preceded the statute, see Exec.Order No. 11,491, 3 C.F.R. 861 (1966-1970 Compilation), reprinted in 5 U.S.C. Sec. 7101 note, at 793 (1982), employee negotiators were not entitled to per diem allowances and travel expenses, see BATF, 464 U.S. at 100, 104 S.Ct. at 445, but those appearing at FLRA proceedings were. In 1973, the Assistant Secretary of Labor for Labor Management Relations ("Assistant Secretary") promulgated a rule providing that proceedings conducted by the Assistant Secretary would be considered "official time" and that "necessary transportation and per diem expenses shall be paid by the employing agency or activity." 5 C.F.R. Sec. 206.7(g) (1974); see also 38 Fed.Reg. 30,875 (1973). The FLRA argues that the distinction between negotiating and appearing at official proceedings should survive the demise of the Executive Order regime. We disagree.
 
 
 18
 First, while the Assistant Secretary's regulation provided that employees appearing as witnesses would be granted both official time and travel expenses, Congress expressly included only the "official time" portion in section 7131(c). The statute is silent on the subject of travel expenses and per diem, leading to the inference that Congress intended to continue the Executive Order practice with respect to official time, but not with respect to travel expenses. The legislative history, for example, refers only to official time. The House Committee Report stated that section 7131(c) "empowers the Authority to make determinations as to whether employees participating in proceedings before the Authority shall be authorized official time." H.R.Rep. No. 1403, 95th Cong., 2d Sess. 58 (1978) (emphasis added). We cannot ignore the strong signal that Congress' omission of travel expenses was deliberate, especially in light of the fact that it included official time in the statute. See 2A N. Singer, Sutherland Statutory Construction Sec. 47.23, at 194 (4th ed. 1984) ("expressio unius est exclusio alterius").
 
 
 19
 Furthermore, we have previously recognized that the Executive Order system has limited value in interpreting the contemporary statute. Congress viewed the statute as a departure from the law that had developed under the Executive Order structure, see Department of Defense v. FLRA, 659 F.2d 1140, 1163 (D.C.Cir.1981), cert. denied, 455 U.S. 945 (1982); see also NTEU v. FLRA, 691 F.2d 553, 562 n. 89 (D.C.Cir.1982). We have considered Executive Order practice as relevant only when we have been "unable to determine congressional intent after applying traditional tools of statutory construction." National Labor Relations Board Union v. FLRA, 834 F.2d 191, 202 (D.C.Cir.1987) (citation omitted). In this case, we are able to discern congressional intent to modify the Executive Order approach to travel reimbursement.
 
 
 20
 Nor does section 7135(b) of the statute dictate a different result. That section provides that regulations issued under the Executive Order system "shall remain in full force and effect until revised or revoked by the President, or unless superseded by specific provisions of this chapter or by regulations or decisions issued pursuant to this chapter." This does not mean, however, that the Assistant Secretary's regulation is still binding, or that Congress meant to continue it in effect. Instead, section 7135 was merely intended "to prevent the slate from being wiped clean until the Authority and the courts could interpret the Act in a manner consistent with Congress's intent." Immigration and Naturalization Serv. v. FLRA, 855 F.2d 1454, 1461 (9th Cir.1988).
 
 
 21
 Finally, the FLRA contends that its practice is consistent with that of the Merit Systems Protection Board ("MSPB" or "Board"), which orders agencies to compensate their employees for expenses incurred in transportation to and from Board hearings. See In re Maisto, 28 M.S.P.R. 436 (1985). The MSPB and FLRA are not on the same footing, however. The MSPB orders travel reimbursement under a regulation which provides that federal employees testifying before the Board "shall be in official duty status." 5 C.F.R. Sec. 1201.33 (1988). This regulation was promulgated pursuant to the MSPB's enabling statute, 5 U.S.C. Secs. 1205, 7701(j). In contrast, section 7131(c) implies that employees appearing before the FLRA are not in official duty status, although they may be on "official time." Thus, the fact that the MSPB reimburses travel costs is no indication that the FLRA is authorized to do so.
 
 
 22
 One other section of the statute warrants only the briefest of comments. We do not decide whether 5 C.F.R. Sec. 2429.13 might be upheld under 5 U.S.C. Sec. 7132(c), which the Authority contends should be read in pari materia with 5 U.S.C. Sec. 1205(b) and (c), since the FLRA in its decisions below never invoked section 7132(c) as a basis of its regulation. See SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). In the only express reference to section 7132 in the proceedings below, the ALJ in Wright-Patterson noted that "the complaint does not allege a specific violation of section 7132(c) of the Statute and the General Counsel has made no contention that Respondent was obligated to pay Palacio's travel expenses pursuant to * * * any other provision of law other than section 7131(c)." 24 F.L.R.A. at 205.
 
 
 23
 * * *
 
 
 24
 Because we find that the Authority's regulation is without statutory basis, we need not consider petitioner's argument that the FLRA lacks the power to force an agency to pay the travel expenses of an employee who appears on behalf of a labor organization in a proceeding in which the employing agency has an adverse interest, or no interest at all. We similarly do not decide whether the Travel Expense Act, which authorizes reimbursement for travel expenses incurred "when traveling on official business," 5 U.S.C. Sec. 5702(a)(1), might be applicable to employees subpoenaed by the FLRA, as opposed to those summoned by either party, because the FLRA does not rely on that Act as support for its regulation. Even in the absence of 5 C.F.R. Sec. 2429.13, of course, agencies are required to bargain as to the exercise of their discretion under the Travel Expense Act in determining what activities constitute "official business." See Department of Treasury, U.S. Customs Serv. v. FLRA, 836 F.2d 1381, 1384-86 (D.C.Cir.1988).
 
 
 25
 We hold only that the FLRA's regulation compelling federal agencies to pay travel and per diem expenses for their employees required to appear at FLRA proceedings exceeds the congressional grant to the Authority under section 7131(c). Accordingly, the petitions for review are
 
 
 26
 Granted.